IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MORGAN ANDERSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FINLEY CATERING CO., INC., and | : | |
| UNION TRUST EVENTS, INC. | : | NO. 16-619 |

**MEMORANDUM**

Padova, J.                                                                                  October 27, 2016

Plaintiff Morgan Anderson commenced this employment discrimination action against Defendants Finley Catering Co., Inc. and Union Trust Events, Inc., asserting claims of a racially hostile work environment, race discrimination and retaliation pursuant to 42 U.S.C. § 1981, Title VII, and Pennsylvania common law.  Defendants have filed a Motion to Dismiss the First Amended Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  For the following reasons, we deny the Motion.

**I.   BACKGROUND**

The Complaint alleges that Defendant Finley Catering Co., Inc. ("Finley Catering") is a catering business, which owns and/or operates Defendant Union Trust Events, Inc. ("Union Trust").  (Compl. ¶ 9.)  According to the Complaint, Defendants share common ownership, management, and operations.  (Id. ¶ 10.)  Plaintiff Morgan Anderson is an African-American male who was hired by Defendants in September 2014.  (Id. ¶¶ 14-15.)  During his employment with Defendants, Plaintiff worked as a full-time prep cook out of Defendants' Union Trust building located in Philadelphia, Pennsylvania, and he reported to Defendants' owner, Steve Finley.  (Id. ¶¶ 11, 15-16.)  He was the only African-American working as a full-time cook in that building.  (Id. ¶ 18.)

The Complaint alleges that Defendants' management made racially insensitive jokes and comments, sometimes in Plaintiff's presence and sometimes directed at Plaintiff. (Id. ¶ 19.) They also assigned Plaintiff to unfavorable work more often than they assigned such work to Plaintiff's non-black coworkers. (Id. ¶ 20.) In October 2014, Plaintiff complained to Defendants' management, including Steve Finley, that he was experiencing racial discrimination at work. (Id. ¶ 21.) Soon thereafter, certain members of Defendants' management began to treat Plaintiff in a hostile manner. (Id. ¶ 22.) Among other things, members of management called Plaintiff a "snitch" and warned him that he needed to watch what he said. (Id.) In December 2014, Plaintiff's schedule was abruptly reduced from his usual 40 hours per week to sometimes as few as three hours per week. (Id. ¶¶ 23-24.) In addition, Plaintiff began receiving insufficient information about where he would work, what days he would work, and the hours of his shifts. (Id. ¶ 25.)

In May 2015, Plaintiff filed for partial unemployment compensation benefits due to his reduction in hours. (Id. ¶ 26.) On May 20, 2015, shortly after Plaintiff filed for benefits, Defendants' management told Plaintiff that he was "fired" from his job as a cook and would instead be employed as a dishwasher. (Id. ¶ 27.) However, since that time, Defendants' management has not scheduled Plaintiff to work. (Id. ¶ 28.)

Plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and dual-filed his charge with the Pennsylvania Human Relations Commission. (Id. ¶ 5.) He subsequently received a Right to Sue letter from the EEOC (id. ¶ 6), and he commenced this action on February 8, 2016. The Complaint asserts three Counts. Count I asserts a claim of a racially hostile work environment, race discrimination, and retaliation pursuant to 42 U.S.C. § 1981. Count II asserts a claim of a racially hostile work environment,

race discrimination, and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.   Count III asserts a retaliation claim pursuant to Pennsylvania common law.

## II.     LEGAL STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).   We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.   DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011)).   Legal conclusions, however, receive no deference, as the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"   Wood v. Moss, 134 S. Ct. 2056, 2065 n.5 (2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"   Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).   The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'"   Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."   Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).   In the end, we will grant a motion to dismiss brought pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "'to raise a right to relief

above the speculative level.'"  W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

## III. DISCUSSION

### A. Counts I and II

In Counts I and II of the Complaint, Plaintiff asserts race discrimination, retaliation and hostile work environment claims against both Defendants pursuant to Title VII and § 1981. Defendants argue that we should dismiss the claims against Finley Catering, because Union Trust is Plaintiff's employer and the Complaint fails to allege sufficient facts to support a claim that Finley Catering can be liable under either a "joint employer" or "single employer" theory.[1] Plaintiff does not dispute that only an employer can be held statutorily liable for employment discrimination under § 1981 or Title VII, but he argues that the allegations of the Complaint are sufficient to support claims against both Union Trust and Finley Catering as either joint employers or a single employer.

"[A] joint employment relationship may exist when 'one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer.'" Myers v. Garfield & Johnson Enters., Inc., 679 F. Supp. 2d 598, 607 (E.D. Pa. 2010) (quoting NLRB v. Browning–Ferris Indus. of Pa., 691 F.2d 1117, 1123 (3d Cir. 1982)). Thus, "a joint employer relationship may exist for the purposes of [antidiscrimination laws] when 'two entities

---

[1] In support of their Motion, Defendants assert a variety of facts that we cannot consider on a Rule 12(b)(6) Motion, including that Union Trust Events "hired Plaintiff," "is the only entity operating a kitchen at the Union Trust building," and is "the only corporation that controls employees who work in that kitchen." (Defs.' Br. at 3, 7-8); Mayer, 605 F.3d at 230 (permitting us to consider "only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents" (citation omitted)).  Accordingly, we do not consider such facts in resolving Defendants' Motion.

exercise significant control over the same employees.'" Id. (citing Graves v. Lowery, 117 F.3d 723, 727 (3d Cir. 1997)). In determining whether there is a "joint employer" relationship, such that two different companies can both be held liable for the same alleged misconduct, courts look to the following factors:

> (1) [A]uthority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours; (2) day-to-day supervision of employees, including employee discipline; and (3) control of employee records, including payroll, insurance, taxes, and the like.

Id. (alteration in original) (quoting Butterbaugh v. Chertoff, 479 F. Supp. 2d 485, 494 (W.D. Pa. 2007)). "No single factor is dispositive and a weak showing on one factor may be offset by a strong showing on the other two." Id. at 608 (citing Butterbaugh, 479 F. Supp. 2d at 496-97).

Plaintiff's second theory of liability, the "single employer" theory, is used to determine whether "two nominally distinct companies" should be treated as a single entity for purposes of antidiscrimination laws. Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 84 (3d Cir. 2003). As the United States Court of Appeals for the Third Circuit has explained, a court should consider two companies to be a "single employer" where the "two . . . entities' affairs are so interconnected that they collectively caused the alleged discriminatory employment practice."[2] Id. at 86. A determination as to whether two entities are so interconnected requires an "intentionally open-ended, equitable inquiry," which focuses "on the degree of operational entanglement --

---

[2] The Third Circuit also "consider[s] a company and its affiliates a single employer . . . when a company has split itself into entities with less than fifteen employees intending to evade Title VII's reach or (2) when a parent company has directed the subsidiary's discriminatory act of which the plaintiff is complaining." Nesbit, 347 F.3d at 85-86. Here, however, there is no allegation in the Complaint that Union Trust and Finley Catering split itself into entities with less than fifteen employees in order to evade the anti-discrimination laws. Moreover, although the Complaint alleges that Finley Catering "owns and/or operates" Union Trust, it also alleges that the companies share "common ownership" and that Steve Finley owns both companies, and it never explicitly alleges that Finley Catering is Union Trust's parent. (Compl. ¶¶ 9, 10, 21.) Accordingly, we do not read the Complaint to allege a parent-subsidiary relationship. We therefore do not find the two additional bases for finding two entities to constitute a single employer to be implicated here.

whether operations of the companies are so united that nominal employees of one company are treated interchangeably with those of another." Id. at 87

> Relevant operational factors include (1) the degree of unity between the entities with respect to ownership, management (both directors and officers), and business functions (e.g., hiring and personnel matters), (2) whether they present themselves as a single company such that third parties dealt with them as one unit, (3) whether a parent company covers the salaries, expenses, or losses of its subsidiary, and (4) whether one entity does business exclusively with the other.

Id.

Here, the Complaint alleges that Finley Catering "owns and/or operates" Union Trust. (Compl. ¶ 9.) It further alleges that Union Trust and Finley Catering share common ownership (Steve Finley), management, and operations, have centralized control of labor relations, and have common financial controls. (Id. ¶¶ 10, 21.) On the other hand, the Complaint does not specifically allege that the two Defendants share "(1) authority to hire and fire employees, promulgate work rules and assignments, and set conditions of employment, . . . (2) day-to-day supervision of employees, . . . ; and (3) control of employee records." Myers, 679 F. Supp. 2d at 607. It likewise does not allege any specific facts concerning "the degree of unity between the entities with respect to ownership, management (both directors and officers), and business functions (e.g., hiring and personnel matters)" and makes no reference to "whether they present themselves as a single company" to third parties, whether one "covers the salaries, expenses, or losses of" the other, or whether one "does business exclusively with the other." Nesbit, 347 F.3d at 87.

While the Complaint's allegations are not detailed, we also recognize that "the precise contours of an employment relationship can only be established by a careful factual inquiry" and, thus, discovery is often necessary before a plaintiff can reliably define the contours of the employment relationship. Graves, 117 F.3d at 729 (citation omitted); see also Thompson v. US

Airways, Inc., 717 F. Supp. 2d 468, 479 (E.D. Pa. 2010) (refusing to dismiss a claim that defendants are "joint employers" without the opportunity for discovery, noting that the issue is "intensely factual"). Accordingly, we conclude that Plaintiff's allegations that Finley Catering and Union Trust are both owned by Steve Finley, share common management and operations, and have centralized control of labor relations and common financial controls are sufficient at this stage of the proceedings to give rise to a reasonable inference that the two companies are either joint employers or a single employer under the relevant tests. See, e.g., Hartman v. Chestnut Hill College, Civ. A. No. 00-1400, 2000 WL 1016655, at *1-2 (E.D. Pa. July 7, 2000) (refusing to dismiss claim based on "single employer" or "joint employer" relationship, observing that the allegations "do not specifically bring [one defendant] into a 'single employer' or 'joint employer' role with the other defendants," but concluding that it would be "premature to dismiss the complaint" because the "allegations . . . could lead a reasonable mind to believe that" there was such a relationship.) Accordingly, we deny Defendants' Motion insofar as it seeks to dismiss the claims against Finley Catering in Counts I and II.

B.  **Count III**

Plaintiff alleges in Count III that he was terminated in retaliation for making an unemployment compensation claim, in violation of Pennsylvania common law.[3] Defendants argue that we should dismiss this claim because Plaintiff's Charge of Discrimination does not mention retaliation for the filing of unemployment benefits and, thus, Plaintiff failed to exhaust his

---

[3] See Janis v. La-Z-Boy Furniture Galleries, Civ. A. No. 05-2410, 2006 WL 724157, *7 (E.D. Pa. Mar. 17, 2006) (acknowledging existence of wrongful discharge claim under Pennsylvania common law when employee is fired for filing an unemployment compensation claim (citing Shick v. Shirey, 716 A.2d 1231, 1234 n.3 (Pa. 1998))).

administrative remedies.[4]  However, as Plaintiff properly notes, the requirement that a plaintiff exhaust his administrative remedies is a statutory requirement that applies only to statutory claims. See, e.g., 42 U.S.C. § 2000e-5 (requiring exhaustion of administrative remedies before filing Title VII claim).  As Plaintiff rests his retaliation claim in Count III on Pennsylvania common law and Defendants cite no relevant authority that requires the exhaustion of such a common law claim, we deny Defendants' Motion insofar as it seeks dismissal of Count III for failure to exhaust administrative remedies.

Defendants also appear to argue that we should dismiss Count III, because the Complaint does not specifically allege that they were advised of Plaintiffs' filing of a claim for unemployment compensation prior to their termination of Plaintiff's employment.[5]  However, the Complaint alleges that Plaintiff filed for unemployment compensation "in or about May of 2015" and that "[o]n . . . May 20, 2015 (after [Plaintiff's] filing for unemployment compensation benefits), Defendants' management told Plaintiff that he was 'fired' from his cook job . . . ."  (Compl. ¶¶

---

[4] Defendants also argue in a single sentence that "for the reasons set forth [in connection with Counts I and II, Count III] must be dismissed specifically as to Defendant Finley Catering Co."  (Defs.' Br. at 9.)  As we have rejected Defendants' arguments as to Count I and II, we also reject those same arguments as a basis for the dismissal of the claim against Finley Catering in Count III.

[5] Defendants assert that they did not receive official notice of Plaintiff's claim until sometime after July 22, 2015 and, in support of this assertion, they attach to their Brief in Support of their Motion a copy of an "Employer's Notice of Application," which indicates that it was mailed to Defendants on July 22, 2015, and also includes Defendants' handwritten notes in opposition to the application.  (See Ex. B. to Defs.' Br.)  Defendants' contend that we may consider this document because it is a "self-authenticating public record generated by the Commonwealth of Pennsylvania."  (Defs.' Br. at 5.)  However, we cannot accept Defendants' assertion that the document is a public record, as it seems apparent that the document is from Defendants' files and contains Defendants' own handwritten notes.  Accordingly, we do not consider this document in connection with the Motion to Dismiss.  Moreover, even assuming for the sake of argument that Defendants received official notice of Plaintiff's application for unemployment benefits after Plaintiff was fired, such fact does not preclude the possibility that Defendants received unofficial notice prior to the firing and, therefore, does not demonstrate that Plaintiff cannot state a claim upon which relief can be granted.

26-27.)  We therefore conclude that, reading the allegations of the Complaint in the light most favorable to Plaintiff, the Complaint sufficiently alleges that Defendants fired Plaintiff in retaliation for his filing for unemployment compensation benefits.  We therefore also deny Defendants' Motion to Dismiss insofar as it seeks dismissal of Count III for failure to specifically allege that Defendants had notice of Plaintiff's application for unemployment benefits prior to firing him.

## IV. CONCLUSION

For the foregoing reasons, we deny Defendants' Motion to Dismiss in its entirety.  An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

John R. Padova, J.